UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTONIO TYSON                                             CIVIL ACTION

VERSUS                                                    NO. 08-4599

ROBERT C. TANNER - WARDEN, ET AL.                         SECTION: "C"(1)

### REPORT AND RECOMMENDATION

  Plaintiff, Antonio Tyson, a state prisoner, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against Warden Robert C. Tanner, Lieutenant William Deering, Sergeant Christopher Mitchell, Sergeant James Seal, Captain Kevin Luper, and Major Jeff Williams.¹ In an amendment attached to the original complaint, plaintiff added as defendants Sergeant Larry Weary, Sergeant Jeffrey Primes, Sergeant Charles Griffin, Sergeant Thomas Margiotta, Lieutenant Thomas Mitchell, Sergeant Brandon, and Assistant Warden Bickham. Plaintiff later filed an amended complaint adding Lisa Ard as a defendant.

  A Spears hearing was held on November 5, 2008, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims. See Spears v. McCotter, 766 F.2d

---

¹ In the original complaint, plaintiff asked that Dr. Jerry Thomas and Nurse Buckley (also referred to in the complaint as "Nurse Burkley") be served; however, they were not listed as defendants in the caption of the complaint. At the Spears hearing held in this matter, plaintiff stated that he was not suing Thomas or Buckley; rather, he simply wanted them served because they witnessed one of the incidents on which this lawsuit is based.

179 (5th Cir. 1985).[2]  At that hearing, he was sworn and his testimony was recorded.  Based on the complaint, as amended, and the Spears hearing testimony, the Court finds that plaintiff is making the following allegations in this civil action.

Plaintiff alleges that, on September 8, 2008, he was strip-searched by Sergeants James Seal and Christopher Mitchell[3] on the orders of Lieutenant William Deering.  During that search, Mitchell stated that he saw contraband hidden in plaintiff's anus, an allegation which resulted in the search being repeated several times by Mitchell, Seal, Deering, Captain Kevin Luper, and Major Jeff Williams.  Additionally, on Williams' orders, plaintiff was required to submit to a body cavity search in the infirmary.  The subsequent searches failed to reveal contraband.  His bowel movements were then monitored but no contraband was ever passed.  The next day, plaintiff filed an administrative grievance regarding the incident; however, that grievance was rejected by Warden Robert Tanner.

In the amendment attached to the original complaint, plaintiff claims that, as a result of his filing of the administrative grievance, he was subjected to retaliatory cell and strip searches in September of 2008 by Sergeant Larry Weary, Sergeant Jeffrey Primes, Sergeant Charles Griffin,

---

[2] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

[3] In the complaint, Sergeant Mitchell is referred to both as *Christopher* Mitchell and *Cody* Mitchell.  At the Spears hearing, plaintiff explained that Mitchell goes by both names.

Sergeant Thomas Margiotta, Lieutenant Thomas Mitchell, Sergeant Brandon, and Assistant Warden Bickham.

In the amended complaint, plaintiff claims that his rights were violated when Lisa Ard opened and read his mail and when she falsely accused him of a disciplinary violation.[4]

### I.  Claims Against Lieutenant Thomas Mitchell and Sergeant Brandon

At the Spears hearing, plaintiff stated that he wished to voluntarily dismiss his claims against Lieutenant Thomas Mitchell and Sergeant Brandon because those claims had been satisfactorily resolved.  Subject to exceptions not applicable in this case, a plaintiff has an absolute right to dismiss without prejudice his claims against defendants at any time prior to those defendants filing an answer or a motion for summary judgment.  See Fed.R.Civ.P. 41(a)(1)(i); Carter v. United States, 547 F.2d 258, 259 n. 2 (5th Cir. 1977).  Therefore, in accordance with plaintiff's stated wishes, it is recommended that the claims against Lieutenant Thomas Mitchell and Sergeant Brandon be dismissed without prejudice.

### II.  Remaining Claims

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:

---

[4] The amended complaint was not addressed at the Spears hearing.  Although the Clerk of Court received that document on October 31, it was not docketed and forwarded to the undersigned until November 7, two days after the Spears hearing was held.

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>> (i) is frivolous or malicious;
>> (ii) fails to state a claim on which relief may be granted; or
>> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of a complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6.

Although broadly construing plaintiff's complaint, as amended,[5] and fully considering his Spears hearing testimony, the Court nevertheless finds that plaintiff's remaining federal claims should be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against defendants who are immune from such relief.

### A. Official-Capacity Claims for Monetary Damages

Plaintiff indicates that he is suing the defendants both in their official and individual capacities. However, to the extent that plaintiff is seeking monetary damages against the defendants in their official capacities, those claims must be dismissed for the following reasons.

The defendants, all of whom are employed at the B.B. "Sixty" Rayburn Correctional Center, are officials or employees of the Louisiana Department of Public Safety and Corrections. See, e.g., Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). A suit against a state official or employee in his official capacity is actually a suit against the state itself. Hafer v. Melo, 502 U.S. 21, 25 (1991). The Eleventh Amendment bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity. Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280 (5th Cir. 2002). The United States Fifth Circuit Court of Appeals has noted:

> By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not

---

[5] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

> explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Id. at 281 (quotation marks and citations omitted).  Accordingly, defendants are immune from the claims against them in their official capacities for monetary damages.  Demouchet, 2008 WL 2018294, at *3.

Moreover, even if those claims were not barred by the Eleventh Amendment, the claims would still be subject to dismissal on the alternative ground that state officials sued in their official capacities for monetary damages are not "persons" subject to suit under 42 U.S.C. § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union v. Blanco, 523 F.Supp.2d 476, 479 (E.D. La. 2007); Demouchet, 2008 WL 2018294, at *3.

As to plaintiff's federal claims against the defendants in their *individual* capacities or in any capacity for injunctive or declaratory relief,[6] those claims should be dismissed with prejudice as frivolous and for otherwise failing to state a claim on which relief may be granted for the following reasons.

---

[6] The Eleventh Amendment does not bar a § 1983 claim against a state official or employee in his official capacity where the relief sought is "declaratory or injunctive in nature and prospective in effect."  Aguilar v. Texas Department of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998). Such individuals are also considered "persons" with respect to claims for such relief.  Stotter, 508 F.3d at 821; American Civil Liberties Union, 523 F.Supp.2d at 479.

B.  Claims Regarding the Searches on September 8, 2008

1.  Federal Individual-Capacity Claims Against Lieutenant William Deering,

Sergeant James Seal, Captain Kevin Luper, and Major Jeff Williams

Plaintiff first complains about the fact that he was subjected to strip searches on September 8, 2008.  The Fourth Amendment governs searches of prisoners, and it is clear that a strip search by a prison guard can, in some circumstances, rise to the level of a Fourth Amendment violation. Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007).  That said, it is likewise clear that strip searches of prisoners are not *per se* unconstitutional; rather, such searches may be conducted by prison officials *even absent probable cause* so long as the searches are conducted in a reasonable manner.  Bell v. Wolfish, 441 U.S. 520, 558-60 (1979).

In the instant case, there is no basis for concluding that initial strip search on September 8, 2008, which was performed by two male officers in the shower room, was conducted in an unreasonable manner. Further, plaintiff acknowledges that defendant Christopher Mitchell claimed, albeit allegedly falsely, that during that initial strip search he saw contraband in plaintiff's anus. Based on that report, a ground clearly existed for conducting the follow-up searches and, again, there is no basis for concluding that the follow-up searches were conducted in an unreasonable manner.

In light of the foregoing, the Court concludes that the facts alleged, even when taken in the light most favorable to plaintiff, simply do not show that the conduct of defendants Deering, Seal, Luper, and Williams violated plaintiff's Fourth Amendment rights.  Accordingly, the federal individual-capacity claims against those defendants should be dismissed.

2.  Federal Individual-Capacity Claims Against Christopher Mitchell

The claim against defendant Christopher Mitchell regarding the events of September is slightly different.  As noted, Mitchell strip-searched plaintiff on Deering's orders and, during that search, claimed that he saw contraband hidden in plaintiff's anus.  Plaintiff alleges that Mitchell's contention that he saw contraband was a lie, as evidenced by the fact that no contraband was found in the subsequent searches.

To the extent that plaintiff is claiming that his rights were violated by the mere fact that Mitchell performed the initial search, that claim is frivolous for the same reasons previously noted, i.e. probable cause is not required for such a search and there is no evidence that the search was performed in an unreasonable manner.

To the extent that plaintiff is claiming that his rights were violated when Mitchell allegedly lied about seeing contraband, the Court finds that claim is not actionable.  Even putting aside the fact that it would be seemingly impossible for plaintiff to prove that Mitchell was actually lying as opposed to simply being mistaken, the Court finds no support for plaintiff's implicit contention that such a lie would violate the federal Constitution.  The Court has found no reported cases asserting a similar claim that a guard lied in order to subject a prisoner to further searches.  There are, however, an abundance of cases addressing an arguably analogous situation, i.e. where it is alleged that a guard falsely accused a prisoner of wrongdoing.  In those cases, it has been held that a guard's false accusation, in and of itself, simply is not actionable.  See, e.g., Harper v. Goodwin, 162 Fed. App'x 304, 305 (5th Cir. 2006); Thomas v. Cain, No. 05-941, 2008 WL 622971, at *9 (M.D. La.

Mar. 6, 2008) ("[T]he law is clear that a mere allegation that an inmate plaintiff has been reported or punished for an act which he did not commit does not amount to a constitutional offense.").[7]

### C. Federal Claim Regarding Warden Robert C. Tanner's Rejection of Plaintiff's Grievance

Plaintiff claims that Warden Tanner "erroneously rejected" plaintiff's administrative grievance regarding the September 8 strip search. That claim is foreclosed by Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). In Geiger, a prisoner alleged that prison officials failed to properly investigate his grievances complaining about perceived civil rights violations. The United States Fifth Circuit Court of Appeals held that the claim was frivolous because a prisoner has no federally protected liberty interest in having his grievances investigated and resolved to his satisfaction. Id. at 373-74; see also Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

---

[7] The Court further notes that, even if the claim were actionable and plaintiff successfully prosecuted the claim, he still could not be awarded compensatory damages. Federal law provides that "[n]o federal civil action may be brought by a prisoner ... for mental or emotional injury ... without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In the complaint, the only injuries plaintiff alleges he suffered as a result strip searches were lost sleep and emotional problems. Because he suffered no physical injuries, he could recover at most only nominal or punitive damages. Hutchins v. McDaniels, 512 F.3d 193, 196-98 (5th Cir. 2007).

D.  Federal Claims Regarding Subsequent Allegedly Retaliatory Searches

Plaintiff claims that, as a result of his filing the administrative grievance, he was subsequently subjected to retaliatory cell and strip searches by defendants Weary, Primes, Griffin, and Margiotta.  Plaintiff alleges that defendant Bickham authorized those searches.

The United States Fifth Circuit Court of Appeals has noted that such retaliation claims must be "'regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'"  See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)).  Further, the Fifth Circuit has held:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and ellipsis omitted).

Regarding the first prong of that inquiry, it is evident that plaintiff's retaliation claim implicates a specific constitutional right.  "The law of this circuit is clearly established ... that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  Woods, 60 F.3d at 1164.

That said, it was nevertheless also evident from the Spears hearing that plaintiff simply cannot establish that the defendants' actions in the instant case were motivated by a desire to retaliate against plaintiff for filing the grievance.  To support a retaliation claim, a prisoner must be able to either produce direct evidence of retaliatory motivation or show a chronology of events from

10

which retaliation may plausibly be inferred. Id. at 1166. In the instant case, plaintiff has no direct evidence of the defendants' motivations. Further, he is unable to show that an inherently suspect chronology of events exists to support his retaliation claim. Even accepting as true plaintiff's allegation that he filed a grievance on September 9, 2008, concerning the search on the prior day,[8] the Court cannot infer that the subsequent searches were in any way connected to the filing of that grievance for two reasons.

First, it is hardly an uncommon occurrence for prisoners to file administrative grievances, and there was nothing particularly inflammatory about plaintiff's grievance to distinguish it from the veritable mountain of grievances filed by other prison inmates. In light of those facts, there is basis for concluding that plaintiff's grievance, which was rejected and resulted in no guard being disciplined, so enraged prison officials that it caused them to embark of a campaign to harass him for its filing. A prisoner cannot convert a unfounded challenge to a facially reasonable prison search into an actionable constitutional claim simply by adding a barebones allegation that the guard had a retaliatory motive. Rather, prisoners must allege an adequate factual basis for such a claim; and conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are not sufficient. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous a prisoner's conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints).

Second, there clearly was another factor which *would* reasonably explain the frequent searches, thereby negating *both* an inference of retaliatory motivation and causation. At the Spears

---

[8] A copy of the purported grievance was attached to plaintiff's federal complaint.

hearing, plaintiff conceded that he has *repeatedly* been caught with contraband. Specifically, he acknowledged that he had been caught possessing medication on five occasions and possessing cigarettes "several times." He noted that he had in fact been punished in formal disciplinary proceedings on at least *four* occasions for possessing medication.[9] His history of continued defiance of prison rules regarding possession of contraband obviously are a more likely reason for his frequent searches than is the fact that he filed a relatively innocuous grievance. Moreover, it is reasonable that the searches would include strip searches and body-cavity searches in that plaintiff has a demonstrated proclivity for violating the rules regarding the possession of medication. See, e.g., Bell v. Wolfish, 441 U.S. 520, 559 (1979) (noting that it is an "all too common occurrence" for inmates to secrete small items, such as drugs, in body cavities); Wagner v. Thomas, 608 F.Supp. 1095, 1099 n.17 (N.D. Tex. 1985) (same). In light of the foregoing, there is simply no basis for finding that the searches here stemmed from an intent to retaliate or, as is necessary to show causation, that the searches would not have occurred but for a retaliatory motive.

For all of the foregoing reasons, the undersigned finds that plaintiff's federal retaliation claims against Weary, Primes, Griffin, Margiotta, and Bickham should be dismissed as frivolous.

### E.  Federal Claims for Verbal Abuse

In the complaint, plaintiff also claims that "prior to the searches, R.C.C. employees make degrading marks [sic] such as but not limited to 'what you got up your ass today Tyson ... Come to

---

[9] In his complaint in Tyson v. Tanner, Civ. Action No. 08-4445 (E.D. La.), plaintiff states that he was found guilty of possessing medication in prison disciplinary proceedings on the following dates: March 14, 2007; July 23, 2007; December 6, 2007; and March 5, 2008.  "A court may take judicial notice of related proceedings and records in cases before the same court."  MacMillan Bloedel Ltd. v. Flintkote Co., 760 F.2d 580, 587 (5th Cir. 1985).

12

the bars to be restrained so we can see.'" To the extent that plaintiff's allegation was intended to state a claim for verbal abuse, the Court notes that such claims simply are not actionable. See Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983 ...."); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.").

### F. Federal Claims Regarding the Handling of Plaintiff's Mail

Plaintiff claims that his federal civil rights were violated when his mail was allegedly opened and read. He is incorrect. The United States Fifth Circuit Court of Appeals has clearly held that an inmate's constitutional rights are not violated by the mere fact that his mail is opened and read outside of his presence and without his consent. Brewer v. Wilkinson, 3 F.3d 816, 825 (5th Cir. 1999); see also Malone v. Pedigo, 283 Fed. App'x 203, 204 (5th Cir. 2008); Singletary v. Stalder, No. 01-30260, 2001 WL 1131949 (5th Cir. Sept. 20, 2001).

To the extent that plaintiff is claiming that his mail was wrongly confiscated and/or destroyed, that claim likewise is not cognizable in federal court. In Hudson v. Palmer, 468 U.S. 517 (1984), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, intentionally deprives a prisoner of his property, there is no due process violation *if* the state provides an adequate postdeprivation remedy. Louisiana law clearly provides him with an adequate postdeprivation remedy, i.e. a tort suit brought in state court. Bennett v. Louisiana Department of Public Safety and Corrections, No. 02-30593, 2003 WL 1109690 (5th Cir.

13

Feb. 19, 2003); Arnold v. Inmate Accounts, No. 02-30219, 2002 WL 31017153 (5th Cir. Aug. 20, 2002); Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *7 (E.D. La. Oct. 16, 2008). Accordingly, he may not pursue such a claim in this federal forum. If he wishes to assert a property claim, he may do so only in the state courts. See Millsap v. Skiffer, No. 98-60321, 2000 WL 283171 (5th Cir. Feb. 2, 2000) (upholding dismissal of mail confiscation claim, citing Hudson).[10]

### G. Federal Claim for False Disciplinary Charge

Plaintiff is apparently additionally asserting a claim that his rights were violated when Ard allegedly falsely accused him of a disciplinary violation. That claim also fails. The United States Fifth Circuit Court of Appeals has held that a prisoner's claim that he was he was falsely accused of a disciplinary infraction "is indistinguishable from a malicious prosecution claim." Ordaz v. Martin, No. 93-4170, 1993 WL 373830, at *6 (5th Cir. Sept. 15, 1993); see also Bradley v. Hammonds, No. 97-30287, 1998 WL 699106, at *2 (5th Cir. Sept. 22, 1998). However, in 2003, the Fifth Circuit reexamined the body of law regarding malicious prosecution claims in federal civil rights actions and held that there is no "freestanding constitutional right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). Therefore, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. Figgs v. Vrazel, 106 Fed. App'x 260, 261 (5th Cir. 2004).

---

[10] To the extent that plaintiff is claiming that the defendants were motivated by a desire to retaliate against him, the Court again notes that conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are not sufficient to state a cognizable claim. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous a prisoner's conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints).

### H.  State Law Claims

Plaintiff indicates that he is also asserting claims under state law.  However, if plaintiff's federal claims are dismissed as recommended, it is appropriate for the Court to decline to exercise supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

### III.  Plaintiff's Motion for Summary Judgment

The Court notes that plaintiff has filed a motion for summary judgment.  Rec. Doc. 12.  Because he is not entitled to relief for the reasons noted in this opinion, that motion should be denied.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claims against Lieutenant Thomas Mitchell and Sergeant Brandon be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's federal claims against Warden Robert C. Tanner, Lieutenant William Deering, Sergeant Christopher Mitchell, Sergeant James Seal, Captain Kevin Luper, Major Jeff Williams, Sergeant Larry Weary, Sergeant Jeffrey Primes, Sergeant Charles Griffin, Sergeant Thomas Margiotta, Assistant Warden Bickham, and Lisa Ard be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

It is **FURTHER RECOMMENDED** that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment, Rec. Doc. 12, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this nineteenth day of November, 2008.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**